**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENAE GIBSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SARAYA USA, INC. d/b/a LAKANTO, a Utah corporation<br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Denae Gibson ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Saraya USA, Inc. doing business as Lakanto ("Lakanto" and/or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except for those allegations pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1. This putative class action seeks to hold Defendant responsible for materially misleading statements made on the labels of its LAKANTO MONKFRUIT SWEETENER (the "Products" or "Product").[1]

2. Despite numerous, prominent representations on the Product labels that the Products are a "MONKFRUIT SWEETENER" containing a "rare superfood prized for its sweetness and ability to raise chi, or life energy" the Products contain almost no monk fruit.

3. According to independent laboratory testing commissioned by Plaintiff's counsel, the Products contain 98.85% erythritol and only 1.15% monk fruit extract.

[1] The definition of Products includes all sizes of the "Classic" and "Golden" flavors of Defendant's "MONKFRUIT SWEETENER".

4. As depicted and set forth in detail herein, on the labels of the Products, Defendant prominently and repeatedly represents the Products as a premium, monk fruit sweetener (the label statements are defined below as the "Representations").

5. Defendant intentionally makes the label Representations to capitalize on consumers' desire to purchase a premium sweetener that is derived from a natural source: monk fruit.

6. Furthermore, Defendant intentionally omits the truth—that the Products are almost completely comprised of erythritol, a chemically processed sugar alcohol with known health risks, including heart attack, stroke and digestive issues.

7. Reasonable consumers of Defendant's Products, like Plaintiff, are misled to believe that they are purchasing a premium sweetener that contains a substantial amount of monk fruit when in fact they are purchasing a Product that contains 98.85% erythritol.

8. Plaintiff and reasonable consumers have suffered economic injury based on the purchase price of the Products, which they would not have purchased or would not have purchased on the same terms if they knew the truth.

9. Defendant has profited unjustly as a result of its deceptive conduct. Plaintiff therefore asserts claims on behalf of herself and similarly situated purchasers for violation of New York General Business Law §§ 349 and 350 and unjust enrichment.

**JURISDICTION & VENUE**

10. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than

Defendant.

11. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York. This Court also has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

12. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

**PARTIES**

13. Plaintiff Denae Gibson is a citizen of New York who resides in New Windsor, New York.

14. Plaintiff has purchased the Products on numerous occasions over the last three years, including from amazon.com.

15. In purchasing the Products, Plaintiff relied on Defendant's misleading Representations and reasonably believed that the Products contain a substantial amount of monk fruit.

16. Had Plaintiff known the Representations were false and misleading, and that the Products only contain 1.15% monk fruit extract, she would not have purchased the Products, or, at the very least, would have only been willing to purchase the Products at a lesser price.

17. Defendant Saraya USA, Inc. d/b/a Lakanto is a corporation organized under the laws of Utah with its principal place of business located at 1470 West 1200 North, Orem, Utah 84057.

18. Defendant manufactures, packages, labels, advertises, markets, distributes and/or

sells the Products in New York and throughout the United States. Defendant, at all times material hereto, conducted business in New York, maintained agents for the customary transaction of business in New York, and conducted substantial and not isolated business activity within this state.

## FACTUAL BACKGROUND

### A. Defendant's Representations are False and Misleading

19. The following are label images of the Products at issue:












20. The front and back labels of the Products contain the following images and statements (collectively, the "Representations"):

i. On the front label, in very large all-caps, bold lettering, the statement "MONKFRUIT SWEETENER"[2];

ii. On the front label, a large image of what appears to be a Buddhist monk. In accordance with the vignette on the back label, the monks discovered monk fruit and used it to "increase chi" or "life energy";

iii. On the back label, a vignette stating: "**OVER A THOUSAND YEARS AGO** In the remote mountain highlands of Asia, a group of Buddhist monks called the Luohan achieved enlightenment and ascension through meditation and pure living. The monks discovered a rare superfood prized for its sweetness and ability to raise chi, or life energy. This sacred fruit was named monk fruit and was used for centuries to increase chi and well-being, earning it the nickname 'The Immortals Fruit.'";

iv. Also on the back label, the statement: "We still harvest monk fruit for Lakanto in the same pristine area according to traditional and environmental methods."; and

v. "**DISCOVER YOUR CHI** Lakanto's mission is to bring chi to life by inspiring people to reach their highest potential in health and wellness and by creating

[2] Directly below this representation in smaller, white lettering are the words "WITH ERYTHRITOL". In addition, erythritol is included in the ingredient list, which states: "INGREDIENTS: Erythritol, Monk Fruit Extract". The disclosure that the Products contain erythritol does not remedy or excuse Defendant's misleading Representations. Despite the disclosure, reasonable consumers of Defendant's Products do not expect that the Products contain 98.85% erythritol and only 1.15% monk fruit. Instead, as set forth herein, Defendant's Representations lead consumers to believe that the Products contain a substantial amount of monk fruit, when in fact they contain almost no monk fruit.

products that are innovative, delicious, natural, nutritious, sugar-free, and healthy."

21. These Representations are voluntary advertising statements.

22. The Representations are not governed or required by any government or FDA regulation or requirement.

23. Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

24. These Representations, individually and collectively, are likely to mislead and do mislead reasonable consumers to believe that the Products contain a substantial amount of monk fruit.

25. The Products in fact contain almost no monk fruit.

26. Plaintiff's counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

27. In January and February of 2025, the laboratory conducted testing for sugar alcohols by Liquid Chromatography Refractive Index Detector (LC-RID), which tests for compounds like sugars and polymers.

28. The laboratory used the following testing methodologies, which test for sugars in food products:

i. AOAC official method 980.13;

ii. AOAC official method 982.14; and

iii. AACC Method 80-40.

29. According to the results of the scientific testing, the Products contain 98.85% erythritol.

30. According to the results of the scientific testing, the Products contain only 1.15% monk fruit extract.

31. The Products contain the same ingredients and the same composition irrespective of size or "flavor" (e.g., "classic" or "golden" flavor).

32. Accordingly, the results of the testing commissioned by Plaintiff's counsel apply to all of the Products at issue.

**B. <u>Consumers Believe Monk Fruit is a Superior Sweetener</u>**

33. The amount of monk fruit contained in the Products is material to Plaintiff and reasonable consumers.

34. Monk fruit sweetener is a zero-calorie sweetener derived from a natural source—monk fruit.

35. Monk fruit is considered safe to consume and without adverse effects.

36. In contrast to monk fruit, there are known, documented health risks associated with consumption of substantial amounts of erythritol.

37. A specialist in preventative cardiovascular medicine led a study funded by the National Institute of Health ("NIH"), which found "that erythritol is closely associated with risk for 'major adverse cardiovascular events.' In other words, people who have high blood levels of erythritol are more prone to heart attacks, stroke and even death."[3]

38. In addition, the study found: "'A serving of erythritol in common 'keto-friendly' processed food products made blood levels of erythritol go up 1,000-fold, well above the levels linked to enhanced clotting risks,' Dr. Hazen states. 'We found that the risk for clotting can be increased for several days after consumption of just one serving of artificially sweetened food

[3] https://health.clevelandclinic.org/erythritol

containing erythritol.'"[4]

39. Dr. Hazen also recognizes the difficulty of identifying foods that contain high levels of erythritol, even for consumers who read nutrition labels: "'We know that people buying these products are trying to do something good for their health by eating foods that are promoted as better for them. But in reality, they may be inadvertently increasing their risk for harm.'"[5]

40. Erythritol is also known to cause stomach and digestive upset.

**C. <u>Plaintiff Reasonably Relied on Defendant's Representations</u>**

41. During the last three years, Plaintiff purchased Defendant's Products on numerous occasions, including from amazon.com.

42. On May 1, 2023, Plaintiff purchased a 3 lb. bag of the Lakanto Classic Monk Fruit Sweetener on amazon.com for $20.49.

43. Plaintiff's May 1, 2023, purchase was sold on amazon.com by Defendant Saraya USA (Lakanto).

44. Plaintiff purchased the Products for personal and family use.

45. The Products purchased by Plaintiff bear the Representations, set forth above.

46. Plaintiff viewed the Representations on the Product label and, acting reasonably under the circumstances, relied on the Representations.

47. Based on the Representations, Plaintiff reasonably believed that the Products contain a substantial amount of monk fruit.

48. Based on the Representations, Plaintiff reasonably believed that the monk fruit in the Products constitutes more than 1.15% of the Product composition.

---

[4] *Id.*
[5] *Id.*

49. The amount of monk fruit contained in the Product as compared to the amount of erythritol contained in the Product is material to Plaintiff.

50. As described herein, the Representations are false and misleading.

51. Defendant knew the Representations were misleading when it made them.

52. Had Plaintiff known at the time of purchase that the Representations were false and misleading, Plaintiff would not have purchased the Products or would have paid less for them.

53. Defendant continues to sell the Products bearing the Representations.

54. Plaintiff would like to purchase the Products in the future if they contained a substantial amount of monk fruit.

55. Plaintiff continues to suffer harm because she is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether she can purchase the Products in the future.

56. Unless Defendant is enjoined from failing to misrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the mislabeling of the Product has been addressed and remedied.

57. Accordingly, Plaintiff's legal remedies are inadequate to prevent future injury.

**D. Defendant's Products are Misbranded under the Law**

***The Products Are Misbranded Because They Contain Almost No Monk Fruit***

58. Identical New York and federal laws require that food products be accurately and truthfully labeled.

59. The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).[6]

60. Through its deceptive advertising and labeling, Defendant has violated, *inter alia,* NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

61. Consumers rely on marketing and information in making purchasing decisions.

62. Defendant knows that its label Representations are material to consumers, and likely to mislead reasonable consumers to believe that the Products contain a substantial amount of monk fruit.

63. In addition, Defendant knows that its omission that the Products in fact contain 98.85% erythritol is material to consumers of the Products, who desire to purchase a sweetener that is substantially sweetened by monk fruit.

64. Accordingly, Defendant's deceptive Representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

[6] Plaintiff does not seek to enforce the FDCA, but seeks to enforce New York's GBL as set forth below.

65. Plaintiff and Class members reasonably relied to their detriment on Defendant's misleading Representations and omissions.

66. Defendant's false and misleading Representations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and Class members.

67. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and members of the proposed Class, who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

68. Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Fed R. Civ. P. 23(a), (b)(1), and (b)(3). Specifically, the Class is defined as:

> All citizens of New York who, within three years prior to the filing of the initial Complaint ("Class Period"), purchased one or more of Defendant's Products in the State of New York and who do not claim any personal injury from using the Products (the "Class").

69. Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, but not limited to, its legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

70. Plaintiff reserves the right to amend or otherwise alter the above class definition presented to the Court at the appropriate time, or to and add or eliminate classes and subclasses as appropriate, in response to facts learned through investigation, discovery, and the specific theories

of liability, or otherwise.

71. This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

72. **Numerosity:** The precise number of members of the Class is unknown to Plaintiff, but it is clear the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive distribution and sales network throughout New York, and the entire United States. However, members of the Class and their identities may be determined through discovery.

73. **Commonality and Predominance:** This Action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. All members of the Class were exposed to the deceptive practices of Defendant, as alleged herein. Included within the common questions of law or fact are:

a. Whether Defendant is responsible for the conduct alleged herein, which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements to the Class and the public concerning the monk fruit contained in its Products;

d. Whether Defendant's false and/or misleading statements concerning its Products were likely to deceive the public;

e. Whether Defendant violated New York General Business Law §§ 349 and 350;

f. Whether Plaintiff and Class members are entitled to equitable and/or injunctive relief;

g. Whether Plaintiff and Class members have sustained damage as a result of Defendant's unlawful conduct;

h. The proper measure of damages sustained by Plaintiff and Class members; and

i. Whether Defendant was unjustly enriched by its deceptive practices.

74. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and Class members sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories. Further, there are no defenses available to Defendant that are unique to Plaintiff's claims.

75. **Adequacy:** Plaintiff is an adequate representative of the members of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in the prosecution of complex class action litigation, including complex questions that arise in consumer protection litigation. Plaintiff and her counsel will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel. Undersigned counsel has represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

76. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be

impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments; and increases the delay and expense to all parties and the court system and thereby unnecessarily clogging of dockets.

77. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class's claims and the absence of material or dispositive differences in laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

78. **Declaratory and Injunctive Relief:** Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here Defendant has engaged in conduct that has misled consumers about the amount of monk fruit in its Products. Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff would purchase the Products again if the Products contained a substantial amount of monk fruit. Alternatively, Plaintiff might purchase the Products again if they were truthfully labeled and the price for the Products accurately reflected the Product composition.

79. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy as above stated.

## CAUSES OF ACTION

### COUNT I
**Violation of New York G.B.L. § 349 *et seq*.**
**(On Behalf of Plaintiff and the Class)**

80. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

82. This claim is brought pursuant to the laws of the State of New York.

83. Plaintiff and Class members are "persons" within the meaning of the GBL § 349(h).

84. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

85. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

86. Defendant made false and misleading Representations on the labels of the Products, which misleadingly identify them as a monk fruit sweetener when in fact the Products are almost entirely comprised of erythritol.

87. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

88. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products contain a substantial amount of monk fruit.

89. Defendant's deceptive acts and practices were directed at consumers.

90. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts and practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because Defendant fundamentally misrepresents that the Products are a monk fruit sweetener.

91. Plaintiff and Class members suffered an ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (as a monk fruit sweetener) and the Products as actually sold (containing 98.85% erythritol).

92. On behalf of herself and other members of the Class, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**<u>COUNT II</u>**
**Violation of New York G.B.L. § 350**
**(On Behalf of Plaintiff and the Class)**

93. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

94. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

95. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

96. New York General Business Law Section 350-a(1) defines false advertising as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

97. Defendant's labeling and advertisement of the Products is and was false and misleading in a material way. Specifically, Defendant advertised the Products as a monk fruit sweetener when in fact the Products contain 98.85% erythritol.

98. Plaintiff understood Defendant's misrepresentations to mean that the Products contain a substantial amount of monk fruit.

99. Defendant's misrepresentations are consumer-oriented and were and are likely to mislead reasonable consumers acting reasonably under the circumstances.

100. Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

101. As a result of the misrepresentations, Plaintiff and Class members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and/or (ii) they overpaid for the Products on account of the misrepresentations, as described herein. As a result, Plaintiff and Class members have been damaged either in the full amount of the purchase

price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

102. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and Class members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

103. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

104. Defendant, through its misleading Representations and omissions, enticed Plaintiff and members of the Class to purchase the Products.

105. Plaintiff and Class members conferred a benefit on Defendant by purchasing the Products.

106. By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

107. Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

108. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its deceptive marketing and advertising practices.

109. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by Defendant

due to its wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendant:

(a) For an order certifying the New York Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For an order requiring Defendant to undertake a corrective advertising campaign;

(g) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(h) Granting such other and further relief as many be just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 3, 2025

Respectfully submitted,

**KAMBERLAW, LLC**

By: */s/ Frederick J. Klorczyk III*
Frederick J. Klorczyk III

305 Broadway, Suite 713
New York, NY 10007
Tel: (646) 964-9604
Fax: (212) 202-6364
Email: fklorczyk@kamberlaw.com

*Attorneys for Plaintiff and the putative Class*